# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

JAMES J. CROWLEY,

    Plaintiff,

vs.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

No. 19-CV-0035-KEM

**MEMORANDUM OPINION AND ORDER**

_____

Plaintiff James J. Crowley seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Crowley argues Administrative Law Judge (ALJ) Julie K. Bruntz erred in finding Crowley did not meet listed impairments, in evaluating medical opinions, and in evaluating his subjective complaints. For the reasons that follow, I affirm the Commissioner's decision.

## I.    BACKGROUND

Crowley, born in 1967, worked as a restaurant manager for many years, followed by a short period working as a night auditor at a hotel in 2011 and 2012. AR 33, 40-41, 81, 276.[1] He has long suffered from lower back pain and has undergone multiple back surgeries. Relevant to this appeal, he visited the emergency room (ER) three times from June to July 2012 for back pain, during which examinations showed tenderness and positive straight leg raises, but normal range of motion (ROM), strength, and reflexes. AR 423-24, 426, 428, 434, 436-38, 440-42, 486. Magnetic resonance imaging (MRI) in July

---

[1] "AR" refers to the administrative record filed at Docs. 10-1 to 11-8. Duplicate records exist for multiple treatment providers. *See* AR 607-1516 (records from Stanley Mathew, MD); AR 530-36, 1996-1999 (records from Mary Hlavin, MD). For ease, I cite to only one set of records.

2012 showed several areas of disc protrusion causing nerve-root compression and central canal and neuroforaminal narrowing without spinal cord impingement. AR 392-93, 442. Conservative treatment measures, including medication and injections, failed to improve Crowley's pain, and in January 2013, he underwent L5-S1 discectomy surgery on his lower back. AR 452-57, 469. He initially showed improvement following surgery and wanted to return to work (AR 469-73), but his pain returned in March 2013 (AR 473-76, 482-84). Crowley participated in physical therapy and took medication, but his pain continued. AR 316-18, 320-24, 473-77, 482. An MRI in April 2013 showed moderate to severe neural foraminal narrowing from facet arthropathy and disc protrusion. AR 397. Crowley underwent transforaminal lumbar fusion surgery at L5-S1 in July 2013. AR 327, 332-33. His pain and reduced ROM improved following surgery and physical therapy. AR 333-34, 339-48, 350-54, 358-59, 361, 363.

Crowley continued to experience lower-back pain and leg numbness, although medication provided some relief. AR 371-72, 374. An MRI in November 2013 showed unchanged neuroforaminal stenosis on the left side with possible improvement on the right side and stable degenerative changes elsewhere. AR 402-03. Examinations in January and February 2014 showed normal results (including negative straight leg raises), except for pain with lumbar extension and minimal difficulty with toe-heel walks. AR 371-72. At the February visit, Crowley indicated he planned to return to work in the near future and elected to pursue conservative treatment rather than undergoing decompression surgery. AR 372. The provider concluded that Crowley had "stabilized fairly well with regards to his condition." *Id*. Examinations in March 2014 were unremarkable, except for paraspinal tenderness, muscle spasms, and one positive straight leg raise on the right side. AR 377-80. Crowley indicated his pain was poorly controlled but manageable, and he had improvement with radiating pain. AR 380, 484. Crowley filed a prior application for DI benefits in May 2014, which was denied on initial review on November 10, 2014. AR 82. Crowley did not appeal. *Id.*

2

Crowley's examinations showed similar results into 2015, and he continued conservative treatment of pain medication, epidural injections, physical therapy, and a transcutaneous electrical nerve stimulator (TENS) unit. AR 382-86, 421-22, 488-500, 521. Crowley's pain continued, and he suffered a flare in October 2015 after he "overdid himself by cleaning up the house." AR 500. He reported severe back pain that went from the base of his neck and radiated down his right leg. AR 500. Crowley's primary physician, Paul Thomas, DO, referred him to Stanley Mathew, MD, for pain management (Crowley had previously seen Anthony Chiodo, MD, for pain management). AR 45, 371, 500. An MRI in November 2015 revealed "changes, especially in the lumbar spine, with possible impingement of the nerve roots in the lower lumbar spine," and an examination showed positive straight leg raises bilaterally and difficulty lying down and sitting up. AR 503, 505, 513-14. A consulting neurosurgeon recommended continued injections, additional surgery (microlumbar discectomy at L4-L5), or pursuing other options. AR 503, 508, 513-14. Crowley protectively filed for DI benefits on February 26, 2016, alleging disability due to issues with his back, leg, sciatica, arthritis, tinnitus, anxiety, and depression. AR 10, 80-82.

In March 2016, neurosurgeon Mary Hlavin, MD, provided a second opinion at Crowley's request. AR 508, 533. Dr. Hlavin, after noting Crowley had an antalgic gait and decreased sensation and reflex in his right foot during examination, recommended an epidural injection and ordered a computed tomography (CT) scan. AR 508, 533-34. The CT scan showed mild to moderate degenerative changes (including moderate retrolisthesis of L5 on S1, moderate neural foraminal narrowing at L4-L5 and L5-S1, and a disc bulge at L3-L4), and Dr. Hlavin found there was no "significant calcification at L4-L5," there was "some residual left L5 foraminal narrowing," and "the right L5 foraminia actually looked pretty good at the surgical level." AR 531, 535-36. In April, Crowley responded well to injections, and Dr. Hlavin recommended against surgery based on this improvement and Crowley's prior failed surgeries. AR 531. Crowley continued to do well with

3

injections—he indicated in June 2016 that his pain was manageable and in July 2016 that he was doing great. AR 530, 1645, 1691.

The Commissioner denied Crowley's application initially in April 2016 and on reconsideration in July 2016. AR 10, 80-103. In August and October 2016, Crowley reported that injections had not been as helpful in relieving his symptoms. AR 638, 643, 1488, 1708. Crowley started physical therapy in November 2016, which provided improvement before Crowley stopped attending. AR 791-93, 813, 958, 982. In December 2016, Crowley reported "doing much better," and Dr. Hlavin, finding Crowley's pain was likely myofascial in nature, left follow-up treatment to the doctors providing medication management and injections. AR 1984. Crowley had increased pain when he injured himself in February 2017 by picking up his mother, who had fallen and for whom he provided care. AR 1039, 1070. Otherwise, he reported overall improvement from medication, injections, and additional physical therapy. AR 1336, 1388, 1447, 1499, 1507, 1774, 1791, 1838, 1925, 1965.

At Crowley's request, the ALJ held an administrative hearing by video on January 11, 2018. AR 10, 26-28. Crowley and a vocational expert (VE) testified at the hearing. AR 10, 27. The ALJ issued a written opinion on May 16, 2018, following the familiar five-step process outlined in the regulations[2] to find Crowley was not disabled during the relevant period from November 11, 2014 (the day after the denial of Crowley's prior DI benefits application), and March 31, 2016 (the date last insured). AR 10-19. The ALJ determined at step one that Crowley met the insured status requirements under the Social Security Act and had not engaged in substantial gainful activity during the relevant period.

---

[2] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." **King v. Astrue**, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 404.1520(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." **Goff v. Barnhart**, 421 F.3d 785, 790 (8th Cir. 2005) (quoting **Eichelberger v. Barnhart**, 390 F.3d 584, 591 (8th Cir. 2004)).

AR 12. At step two, the ALJ found that Crowley suffers from a severe impairment of "spine disorder, status-post three back surgeries." AR 13. The ALJ found that Crowley's anxiety and depression, while medically determinable, were not severe impairments. *Id*. At step three, the ALJ concluded that Crowley's spine disorder did not meet or equal a listing, including Listing 1.04. *Id*. To evaluate whether Crowley retained the ability to perform his past work (step four) or other work (step five), the ALJ determined Crowley's residual functional capacity (RFC)[3]:

> [Crowley] has the [RFC] to perform light work . . . such that he could lift and carry twenty pounds occasionally, ten pounds frequently; stand and walk for two hours with normal breaks in an eight hour workday; sit for six hours with normal breaks in an eight hour workday; his ability to push and pull, including the operation of hand and foot controls, was unlimited within those weights but he could not do foot controls with the left foot; he could occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; and he would need to avoid concentrated exposure to extreme cold, extreme heat, humidity, wetness, and hazards such as heights and dangerous machinery.

AR 13-14. In making this determination, the ALJ considered Crowley's treatment records, opinions from state agency consultants John May, MD, and Laura Griffith, DO (giving them significant weight), medical source opinions from Dr. Mathew (assigning them little weight), and Crowley's subjective complaints about his symptoms and their limiting effects (finding them inconsistent with other evidence). AR 14-18. Based on the RFC determination and the VE's testimony, the ALJ found that Crowley was able to perform his past relevant work as a night auditor. AR 18-19. Thus, the ALJ found that Crowley was not disabled. AR 19.

The Appeals Council denied Crowley's request for further review on January 23, 2019 (AR 1), making the ALJ's decision that Crowley was not disabled the final decision of the Commissioner. *See* **20 C.F.R. § 404.981**. Crowley filed a timely complaint in this

---

[3] RFC means "the most that a claimant can do despite her limitations." *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. § 416.945(a)(1)**); *accord* **20 C.F.R. § 404.1545(a)(1)**.

5

court (Doc. 1).  *See* **20 C.F.R. § 422.210(c)**.  The parties briefed the issues (Docs. 16, 17, 18) and consented to the jurisdiction of a United States magistrate judge (Doc. 7).

## II.  DISCUSSION

A court must affirm the Commissioner's decision if it "is supported by substantial evidence in the record as a whole." ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**.  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." ***Kirby***, 500 F.3d at 707.  The court "do[es] not reweigh the evidence or review the factual record de novo." ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994).  If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the court] must affirm the decision." ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

Crowley first argues the ALJ erred at step three by failing to find his physical issues meet or equal listed impairments.  Next he argues the ALJ should have given controlling weight to Dr. Mathew's opinions and improperly weighed the state agency consultant opinions from Drs. May and Griffith.  Finally, Crowley argues the ALJ erred in discounting Crowley's subjective complaints.

### A. *Listing 1.04 – Disorders of the Spine*

Crowley argues the record supports a finding that his severe impairment met the requirements of Listing 1.04, disorders of the spine.  Doc. 16 at 14.  During step three of the disability determination, an ALJ considers whether the claimant's impairment meets or equals one of the listings of presumptively disabling impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1.  **20 C.F.R. § 404.1520(a)(4)(iii)**.  If the claimant's impairment meets or equals a listing, that ends the inquiry: the claimant is disabled and entitled to benefits.  ***Sullivan v. Zebley***, 493 U.S. 521, 532 (1990).

6

> To qualify for disability under a listing, a claimant carries the burden of establishing that his condition meets or equals all specified medical criteria. *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995). Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing. "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify."

*McCoy v. Astrue*, 648 F.3d 605, 611-12 (8th Cir. 2011) (bold emphasis added) (quoting *Sullivan*, 493 U.S. at 530)); *see also* ***KKC ex rel. Stoner v. Colvin***, 818 F.3d 364, 370 (8th Cir. 2016) (impairment must satisfy each of the criteria to meet a listing).

> Listing 1.04(A) requires evidence of:
>
> (1) a spine disorder (including herniated nucleus pulposus, spinal stenosis, facet arthritis, or degenerative disc disease) that causes a compromised nerve root or spinal cord; and
> (2) nerve root compression—characterized by:
>     (a) neuro-anatomic distribution of pain,
>     (b) limitations of motion of the spine,
>     (c) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, **and**
>     (d) if there is involvement of the lower back, positive straight-leg raise test (sitting and supine).

**20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A)** (bold emphasis added). A claimant must show he *simultaneously* suffers from all four of the listed criteria of nerve root compression in the second part of the listing (neuro-anatomic distribution of pain, limitations in motion, motor loss, and positive straight leg tests); if the criteria occur "scattered over time, wax and wane, or are present on one examination but absent on another," the nerve root compression does not meet the severity level required to meet the listing. **Social Security Acquiescence Ruling 15-1(4),** *Radford v. Colvin***: Standard for Meeting the Listing for Disorders of the Spine with Evidence of Nerve Root Compression**, 80 Fed. Reg. 57418, 57420 (Sept. 23, 2015) (hereinafter SSAR 15-1(4)); *see also* **Sharpton v. Berryhill**, Case No. 16-cv-1938 (TNL), 2017 WL 4277143, at *3 (D. Minn. Sep. 25, 2017) (collecting cases). In addition, the claimant must also demonstrate

7

that these criteria have continued or are expected to continue simultaneously for at least twelve months. **SSAR 15-1(4)**, 80 Fed. Reg. at 57420.

Here, the ALJ found that Crowley's spine disorder constituted a severe impairment and specifically considered Listing 1.04. AR 13. Neither party disputes that Crowley has a qualifying spine disorder, meeting the first prong of Listing 1.04. *See* AR 338-39, 401-03, 503, 513-14, 519-20 (imaging showed degenerative disc disease, disc bulge, central canal and neural foraminal narrowing, and nerve root impingement); *see also **Banks v. Colvin***, No. 15-CV-01040-CJW, 2017 WL 382239, at *5-6 (N.D. Iowa Jan. 26, 2017) ("claimant satisfies the first requirement of Listing 1.04, because the ALJ found she has degenerative disc disease"). The ALJ concluded that the medical evidence did not support that Crowley's disorder met the severity of Listing 1.04 (the second prong of the listing contained in subsection (A)). AR 13. Substantial evidence supports this conclusion because treatment records show that Crowley did not consistently suffer from the criteria of nerve root compression required under Listing 1.04(A). Crowley suffered from neuro-anatomic distribution of pain—he had ongoing pain in his lower back that would radiate down his right leg and cause foot numbness. AR 337, 342-43, 348, 350-51, 353, 354, 377-78, 424, 436-37, 449-50, 459, 462, 477-80, 482, 494, 496, 502, 521-23, 613, 644, 1254, 1389, 1448, 1485, 2079 (tenderness routinely noted during examinations); *but see* AR 452 (numbness waxes and wanes); AR 550, 1540, 1573 (no tenderness noted during examinations). His pain and numbness, however, generally improved with medication, physical therapy, and injections. AR 333-34, 348, 351, 359, 361, 372, 530-31, 643, 1039, 1253, 1447, 1503, 1691, 1791, 1838, 1925, 1965, 1984; *see also* AR 381, 385 (reported no numbness, tingling, or weakness, and normal gait noted); AR 497 (injections helped right foot numbness but not lower back pain).

Significantly, the record shows Crowley inconsistently exhibited the other criteria under Listing 1.04(A). Although examinations often showed he had limited or reduced range of motion in his spine (AR 317-18, 340, 343-45, 350, 384, 449-50, 477, 613, 644, 793, 1040, 1254, 1389, 1448, 1485, 1489, 1711, 1794), other examinations showed normal

8

or increased range of spinal motion (AR 347-48, 353, 359, 361, 371, 377, 424, 436, 459, 958). As for motor loss, treatment records show Crowley at times had decreased strength or muscle tone (AR 449, 479, 613, 1040, 1254, 1389, 1448, 1486, 1489), decreased reflexes (AR 441, 449, 496, 521, 523, 533), and decreased sensation (AR 533). More often, however, his examinations revealed normal or improved strength or muscle tone (AR 316, 350, 352, 371-72, 378, 380, 428, 453, 456, 460, 462, 471, 521, 533, 792-93, 1573, 1648, 1711, 1794, 1859, 1928), normal or improved reflexes (AR 371, 378, 384, 428, 453, 456, 460, 471, 473, 488, 490, 493, 505, 1573, 1648, 1711, 1794, 1859, 1928), and intact sensation (AR 316, 378, 380, 384, 424, 440, 449, 456, 460, 462, 471, 521, 613, 645, 1041, 1254, 1389, 1448, 1486, 1490, 1573, 1648, 1711, 1794, 1859, 1928). In addition, results from straight-leg raise tests varied, sometimes showing positive on both sides (AR 340, 353, 428, 462, 490, 493, 505, 1648), sometimes showing positive only on the right side (AR 380, 384, 453, 793, 1573, 1859), and other times showing negative on both sides (AR 371, 449, 477, 1711, 1794, 1928).

The evidence supports the ALJ's conclusion that Crowley's spine disorder did not meet Listing 1.04(A). *See **Sharpton***, 2017 WL 4277143, at *4 (ALJ properly found claimant did not meet Listing 1.04(A) when claimant failed to show motor loss based on examinations showing full muscle strength); ***Banks***, 2017 WL 382239, at *5-6 (evidence failed to establish impairment met Listing 1.04(A) where examinations showed full strength with no muscle atrophy and demonstrated no limitations in motion in claimant's spine; in addition, claimant exhibited positive straight-leg raises only part of the time). The ALJ did not err in considering Listing 1.04.

### *B. Listing 1.02 – Major Dysfunction of a Joint*

Crowley argues, quite briefly, that his chronic, left-ankle pain meets Listing 1.02(A) for major dysfunction of a joint. Doc. 16 at 20; Doc. 18 at 6. Listing 1.02 requires "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal

9

motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)," in addition to the requirement in subpart (A) of "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively." **20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02(A)**.

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living, and they must be able to travel without companion assistance to and from a place of employment or school. *See* **20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(2)**. Examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. *Id*.

***Barnes v. Colvin***, No. CV 4:13-cv-04029, 2014 WL 691176, *4 (W.D. Ark. Feb. 24, 2014) (bold emphasis added).

Crowley mentioned that his prior ankle injury contributed to his chronic back pain. AR 273. He does not appear to have otherwise alleged disability based on issues with his ankle (although he listed arthritis in his disability application, that appears to have stemmed from issues with his back and not his ankle). *See* AR 14, 80-82; *see also* AR 32-64 (Crowley's administrative hearing testimony); AR 222-29, 238-41 (function report and pain questionnaire); AR 304-15 (Crowley's brief for review by the Appeals Council). At step two, the ALJ did not find Crowley suffered from any impairment (severe or otherwise) related to his ankle (Doc. 13), and Crowley does not challenge that finding. His argument regarding Listing 1.02 fails for those reasons alone.

Even if Crowley's argument survived beyond those thresholds, the evidence he relies on—a 2014 examination showing left ankle weakness (AR 383), his 2016 report of pain from his prior left ankle fracture (AR 508-10), and imaging in 2012 and 2016 showing osteoarthritis and moderate joint narrowing in his ankle (AR 394, 515-16)—fail to establish

10

gross anatomical deformity and chronic joint pain and stiffness required under the first part of Listing 1.02. In addition, the record does not support that Crowley's ankle caused an inability to ambulate effectively as required under subpart (A). *See* AR 330, 382, 385, 453, 455, 473, 612-13, 773, 1984; *see also* AR 18 (summarizing activities of daily living), ***Gleghorn v. Colvin***, No. 4:14-CV-426-CEJ, 2015 WL 1180358, *13 (E.D. Mo. Mar. 13, 2015) (substantial evidence—including that claimant "used a single cane to ambulate, and not universally"—supported finding that claimant did not meet Listing 1.02(A)). Indeed, the vast majority of Crowley's treatment records lack mention of him using an assistive device and involved his back pain with limited reference to his ankle. Crowley's argument that he met Listing 1.02 lacks merit.

### C. Medical-Source Opinions

Crowley argues the ALJ erred in evaluating medical opinions, specifically the opinions from the state agency consultants and from his treating source. Doc. 16 at 23-24, 31-33. When determining a claimant's RFC, the ALJ considers "medical opinions . . . together with the rest of the relevant evidence." **20 C.F.R. § 404.1527(b)**. The ALJ considers the following factors to determine the weight to assign any opinion assessing a claimant's RFC:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

***Owen v. Astrue***, 551 F.3d 792, 800 (8th Cir. 2008) (quoting the current **20 C.F.R. § 404.1527(c)**).

Crowley argues the ALJ erred in giving significant weight to opinions from Drs. May and Griffith, the non-examining state agency consultants. In April 2016, Dr. May found Crowley capable of completing light work with the postural and environmental

11

limitations included in the ALJ's RFC determination. AR 13-14, 86-88. In July 2016, Dr. Griffith affirmed this finding, noting that Crowley had not alleged new or worsened conditions, that he was doing well with medications, and that updated imaging showed only mild to moderate degenerative changes. AR 98-100. The ALJ found that although Drs. May and Griffith were non-treating sources, their opinions were "generally consistent with the record as a whole" and gave them significant weight. AR 15-16.

Crowley challenges the weight assigned these opinions based solely on the fact that Drs. May and Griffith did not have access to all of Crowley's treatment records. In addition to outlining the opinions from Drs. May and Griffith, the ALJ summarized Crowley's treatment records—including records from after the state agency reviews—in addition to the treating-source opinions from Dr. Mathew (most of which post-dated the opinions of Drs. May and Griffith). AR 15-17. The ALJ considered the full record in weighing the state agency consultants' opinions. Thus, the ALJ did not err in assigning those opinions significant weight. *See* **Perry v. Colvin**, No. CV 13-1185 (JNE/TNL), 2014 WL 4113015, at *58 (D. Minn. Aug. 20, 2014) (adopting report and recommendation) (ALJ may assign significant weight to opinions from reviewing consultant, even if consultant did not have all medical records, so long as ALJ conducted independent review of the entire medical record); *see also* **Long v. Colvin**, No. 12-04131-CV-C-REL-SSA, 2014 WL 856594, *9 (W.D. Mo. Mar. 5, 2014) (noting gap always occurs between treatment records considered by consultants and an ALJ's opinion; ALJ may nevertheless still consider opinions from those consultants).

In challenging the weight given to treating-source opinions, Crowley argues in one sentence that "t[h]e ALJ did not provide good reasons for rejecting the opinions of Drs. Chiodo, Thomas, Matthew[,] and Hlavin." Doc. 16 at 24. "An ALJ must give 'controlling weight' to a treating physician's opinion if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" **Papesh v. Colvin**, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting **Wagner v. Astrue**, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* **20 C.F.R.**

12

§ 404.1527(c)(2). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" **Reece v. Colvin**, 834 F.3d 904, 909 (8th Cir. 2016) (alteration in original) (quoting **Prosch v. Apfel**, 201 F.3d 1010, 1013 (8th Cir. 2000)). "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." *Id*.

As a preliminary matter, the only treating-source opinions in the record came from Dr. Mathew. Dr. Mathew issued three opinions about Crowley's functional abilities and limitations. AR 537-38 (Functional Capacity Assessment dated June 27, 2016), 2111-16 (Mental Medical Source Statement[4] dated December 11, 2017), AR 2118-21 (Physical Medical Source Statement dated December 12, 2017). Dr. Mathew found Crowley had significant functional limitations. In June 2016, he opined Crowley could stand and walk at least two but less than six hours total and sit less than six hours total in an eight-hour workday. AR 537. In July 2017, he found Crowley could sit for twenty minutes at a time and less than two hours total and stand and walk for ten minutes at a time and less than two hours total during an eight-hour workday. AR 2119. In both opinions, Dr. Mathew included limitations of lifting only ten pounds occasionally, and found Crowley had postural limitations (occasional to complete limitations in balancing, twisting, stooping, climbing, kneeling, crouching, or crawling) and environmental limitations (avoiding even moderate exposure to all environmental factors). AR 537-38, 2120-21. In June 2016, Dr. Mathew included manipulative limitations (Crowley's abilities to reach, finger, and feel), but found he had no such limitations in July 2017. AR 537-38, 2120. In July 2017, Dr. Mathew also opined that Crowley would need to walk for five minutes at a time every twenty minutes, take unscheduled breaks three times per day to rest for two hours at a time

---

[4] I do not address this opinion as it relates only to Crowley's mental RFC, which is not at issue in this appeal. The ALJ could properly discount this opinion because it was outside of Dr. Mathew's area of expertise and treatment of Crowley's back pain. *See* **Jones v. Astrue**, 619 F.3d 963, 971 (8th Cir. 2010).

13

before returning to work, use an assistive device for walking, and be absent from work more than four days per month. AR 2119-21.

The ALJ noted Dr. Mathew's certification in pain management, physical medicine, and rehabilitation, and that he treated Crowley. AR 17. Thus, she appears to have considered Dr. Mathew a treating physician. The ALJ discounted Dr. Mathew's opinions, however, because he only saw Crowley twice during the relevant time period, he failed to support his opinions with objective findings, he omitted the relief Crowley received from injections, and his opinions were issued on check-box forms. *Id*. Substantial evidence supports these findings. Crowley first saw Dr. Mathew on November 16, 2015, and again on March 21, 2016—twice during the relevant period[5] (prior to Crowley's date last insured on March 31, 2016). AR 10, 32, 521, 523. The ALJ could properly consider the frequency of treatment during the relevant period in assessing Dr. Mathew's opinions. *See **Cox v. Barnhart***, 471 F.3d 902, 907 (8th Cir. 2006) (noting claimant had burden to prove disability prior to her date last insured and finding ALJ could give treating-source opinion "less deference," in part, because opinion was written three years after claimant's date last insured); ***Randolph v. Barnhart***, 386 F.3d 835, 839-40 (8th Cir. 2004) (ALJ could refuse to give treating-source opinion controlling weight when opinion was in check-list form and provider had only met with claimant three times prior to issuing the opinion (citing direction from **20 C.F.R. § 404.1527(d)(2)(i)** that treating-source opinions are generally given more weight the longer and more frequently the treating source has seen the claimant)). In addition, the opinions were provided on check-box forms (a few left blank) with very little elaboration. AR 537-38, 2119-21. This was also a proper factor for the ALJ to consider in weighing the opinions. *See **Thomas v. Berryhill***, 881 F.3d 672, 675 (8th Cir. 2018) (ALJ may discount treating-source opinions when the opinions "consist of nothing more than vague, conclusory statements—checked boxes, circles answers, and

---

[5] Crowley also saw Dr. Mathew during additional visits between August 2016 and December 2017. AR 611-13, 643-45, 772-74, 1039-41, 1075-77, 1253-55, 1336-38, 1388-90, 1447-49, 2078-80.

brief fill-in-the-blank responses"— that "cite no medical evidence and provide little to no elaboration").

The record also supports the ALJ's conclusion that Dr. Mathew's opinions were inconsistent with the record. In the July 2017 opinion, Dr. Mathew cited weakness in Crowley's lower extremities and limited range of motion as objective evidence supporting his conclusions. AR 2118. The June 2016 opinion contained no elaboration (other than a handwritten diagnosis) and cited no objective findings or other support for the opined limitations. AR 537-38. Dr. Mathew's examinations during the relevant time period showed Crowley had nearly full strength (4/5) and contained no results for range of motion testing Crowley's lower extremities. AR 522-23. Subsequent treatment notes showed some decreased strength (3+/5) and "limited range of the thoracic lumbar spine due to pain" (without elaboration). AR 613, 644, 773, 1040, 1076, 1254, 1337, 1448, 2079. Most of these records, however, also showed that Crowley's symptoms improved with pain medication and injections (which often helped "significantly"). AR 1039, 1075, 1253, 1336, 1447, 2078 (from December 11, 2017—noting Crowley was "doing very well" and rated his pain at 3/10). Dr. Mathew's own treatment notes combined with the overall treatment record (outlined in the section discussing Listing 1.04 above) undercut Dr. Mathew's opinions and support the ALJ's decision to give them less weight. A treating physician's conclusory report may be entitled to controlling weight if supported by the medical evidence but may be discounted "if it is unsupported by the medical record." *Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019) (concluding ALJ properly gave less weight to treating physician's opinion based on ALJ's examination of "the underlying medical record to determine whether it supported [the treating physician's conclusory opinion]").

The ALJ properly considered the state agency consultants' opinions. The ALJ also gave good reasons, supported by substantial evidence in the record, for giving less weight to Dr. Mathew's treating-source opinions.

15

### D. Subjective Complaints

Crowley asserts the ALJ's decision to discount Crowley's subjective complaints about his symptoms and their limiting effects is not supported by substantial evidence. Doc. 16 at 26-30. When evaluating the credibility of a claimant's subjective complaints—including pain—the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." **Black v. Apfel**, 143 F.3d 383, 386 (8th Cir. 1998); *accord* **Polaski**, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*,[6] 804 F.2d 456 (8th Cir. 1986). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." **Black**, 143 F.3d at 386. "An ALJ 'need not explicitly discuss each *Polaski* factor," and may discount a claimant's subjective complaints so long as the ALJ first acknowledges and considers those factors. **Heino v. Astrue**, 578 F.3d 873, 881 (8th Cir. 2009) (quoting **Strongson v. Barnhart**, 361 F.3d 1066, 1072 (8th Cir. 2004). Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'" **Schultz v. Astrue**, 479 F.3d 979, 983 (8th Cir. 2007) (quoting **Hogan v. Apfel**, 239 F.3d 958, 962 (8th Cir. 2001)).

Here, the ALJ recognized the relevant factors for considering Crowley's descriptions of his symptoms and their effects. AR 17-18. The ALJ concluded that Crowley's subjective complaints were not consistent with the medical evidence and his activities of daily living. AR 14, 17-18. These were both valid reasons for the ALJ to find Crowley's symptoms and limitations were not as severe as he reported. *See* **Milam v. Colvin**, 794 F.3d 978, 985 (8th Cir. 2015) (ALJ may discount claimants reports of disabling pain based on claimant's "regular physical activities" and inconsistencies with the medical

---

[6] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. **Jones v. Callahan**, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

16

record); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (abilities to cook and do house work, laundry, and shopping "are inconsistent with subjective complaints of disabling pain."); *Castro v. Barnhart*, 119 F. App'x 840, 842, 844 (8th Cir. 2005) (per curiam) (inconsistencies with the medical evidence and the claimant's daily activities supported ALJ's evaluation of claimant's subjective complaints). The treatment records show that Crowley's pain improved with medication, injections, and physical therapy. AR 42, 333-34, 497, 530-31, 1039, 1075, 1253, 1336, 1388, 1447, 1570, 1645, 1691, 1791, 1838, 1856, 1925, 1965, 1984, 2078. The record also supports the ALJ's finding that Crowley was able to take care of his own personal needs, care for his mother, prepare meals, clean and do laundry, go grocery shopping, spend time with others, watch sporting events, and play cards. AR 18, 61-62, 223-26, 231-34, 1108; *see also* AR 58-59 (able to drive, go to medical appointments, and run errands), 232 (could load and unload dishwasher), 233 (went outside daily). The ALJ gave good reasons, supported by substantial evidence, for discounting Crowley's subjective complaints.

### III. CONCLUSION

The record demonstrates Crowley suffers from ongoing pain as a result of his spine disorder. Pain or discomfort, however, do not equal disability, and an ALJ can only find a claimant disabled if the claimant's pain is so severe that it prevented the claimant from working. *See Perkins v. Astrue*, 648 F.3d 892, 900-01 (8th Cir. 2011). In this case, the ALJ properly considered Crowley's application and substantial evidence supports the ALJ's denial of benefits.

I **affirm** the Commissioner's decision. Judgment shall enter in favor of the Commissioner.

**IT IS SO ORDERED** this 12th day of June, 2020.

Kelly K.E. Mahoney
United States Chief Magistrate Judge
Northern District of Iowa

17

Case 1:19-cv-00035-KEM  Document 20  Filed 06/12/20  Page 17 of 17